IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-273-FL

| | |
|---|---|
| JASON HENSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN A. ENGLER M.D.; MEGAN E. | ) ORDER |
| GOODING P.A.; NORTH CAROLINA | ) |
| MEDICAL BOARD; and UNC HEALTH | ) |
| PARTNERS LLC Rex UNC Hospital | ) |
| Partners, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court upon defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). (DE 17, 28). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motions are granted.

**STATEMENT OF THE CASE**

Plaintiff commenced this action May 15, 2024, pro se, arising out of allegedly improper medical treatment of plaintiff by defendants John A. Engler, M.D. ("Engler"), Megan E. Gooding P.A. ("Gooding"), and UNC Health Partners LLC/Rex UNC Hospital Partners (the "Hospital") (collectively, the "hospital defendants"), and allegedly improper response by defendant North Carolina Medical Board (the "Board") to a complaint by plaintiff. Plaintiff asserts on the face of the complaint claims for: 1) "Violation of Human Civil Rights in Consent," 2) "Acts of Cruel and Unusual Punishment," 3) "Actions in Negligence from Doctors," 4) "Failure in Medical Standards

of Care," 5) "Failure to Perform Doctor Duties," 6) Failure in Supervision of Medical Practices and Medical Duties," and 7) "Failure in Administration of Medical Faculties and Oversite Practices in Surgery." (Compl. (DE 1) at 1). Plaintiff seeks compensatory and punitive damages from all defendants, as well as injunctive relief from the Board.

The hospital defendants filed the instant motion to dismiss for lack of subject matter jurisdiction and for improper service. Defendant Board separately filed its motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and alternatively to require plaintiff to make a more definite statement. Thereafter, plaintiff responded in opposition.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. "On July 20, 1988, [plaintiff], at the age of 10 years old, was in a major truck accident that caused many body injuries," including injury to his spine, "between the L5-S1 spine vertebrae," requiring "Anterior Lumbar Interbody Fusion (A.L.I.F.) surgery and . . . a donor bone as a retaining plate with small metal pins to realign [plaintiff's] spine correctly." (Compl. p. 10).

In September 2022, plaintiff saw Gooding and Engler for medical treatment "for pain issues and problems dealing with a pinched nerve in his lower back (Posterior L5-S1 spine area)." (Id. at 11). After initial treatment failed to relieve plaintiff's symptoms, plaintiff "researched minimal invidious surgery options to correct his back problem," and suggested a "'Co-flex' spine implant device to Gooding and Engler. (Id. at 12). Gooding allegedly explained, however "that he only did (invidious) Postier [sic] Lumbar Interbody Fusion (P.L.I.F.) lower back surgery using metal rods and screws in the bones." (Id. at 13). Plaintiff objected to this approach, and instead agreed that Engler "could only do Laminectomy and Diskectomy surgery to free the space around the posterior pinched nerves." (Id.).

In October 2022 plaintiff went to the hospital to have scheduled surgery for "Laminectomy and Diskectomy." (Id. at 15). Defendant Engler allegedly assured plaintiff that the surgery was so limited, and with that understanding and his own research, plaintiff consented to the surgery. However, according to the complaint, the hospital defendants "started doing an unknown surgery procedure[]" on plaintiff, including allegedly grinding, drilling, chiseling, and hammering "on the left side of the Anterior front spine L5-S1 vertebral bones until breaking off the Anterior Lumbar Interbody Fusion bone plate," as well as the pins from the L5 and S1 vertebral bones previously installed in 1988. (Id. at 17). This surgery allegedly caused release of bone marrow into the body, as well as "spine pressing against nerves, plus causing narrowing of spinal canal." (Id. at 18).

According to the complaint, plaintiff's body went into shock and the hospital defendants decided "that surgery could not be continued with the rest of the unknown procedure surgery." (Id. at 19). The procedure that was completed allegedly caused "vertebrae to move," and "disc shift in the spine," as well as "spondylolithesis," and plaintiff had an extended recovery period. (Id.). Defendant hospital allegedly "did not know what had happened, or why the surgery was not done as planned, stopped, or went as it did." (Id. at 20).

Defendants Engler and Gooding allegedly "misled and lied to [plaintiff] about his medical diagnosis and medical treatment, plus medical fraud to his billing the Insurance company for work not done to the right side." (Id. at 22). Defendant hospital allegedly gave them "access to its faculties [sic] without any supervision or oversite." (Id. at 23).

In December 2022, plaintiff complained about his surgery at an appointment with defendant Engler, but plaintiff received no explanation by Engler. He then called defendant hospital to speak with a supervisor of Engler and Gooding, stating: "something went wrong with my surgery and [I'd] like to make a complaint. I can see the problem on my MRI." (Id. at 27).

The supervisor allegedly laughed, and plaintiff "hung up because she thought his health concerns were a joke." (Id. at 27). Plaintiff went in person to defendant hospital January 2023, to "file a complaint," and staff left plaintiff with the understanding that a supervisor would be in contact with him. (Id. at 28). In March 2023, plaintiff received a letter from defendant hospital suggesting that his complaint "was closed and nothing could be done." (Id. at 29). Plaintiff called the hospital to explain that the "doctors did the wrong surgery," but the supervisor at the hospital did not understand or provide any assistance. (Id. at 30).

In the meantime, in February 2023, plaintiff "felt he needed to file a complaint with the [Board], to report his surgery concerns and injuries from his unknown surgery." (Id. at 29). In April 2023, plaintiff "received an email about his complaint" to the Board, noting only that plaintiff could receive further updates about the complaint via email. (Id. at 30). Having provided medical records to the Board and hearing nothing back, plaintiff commenced an action in Wake County, with the Board as one of the defendants, in case No. 23CV-24845. In October 2023, the Board sent plaintiff a letter noting, inter alia, that "there was no prosecutable violation of the Medical Practice Act in this instance that would lead to a restriction of [defendant] Engler's license to practice medicine." (Compl. Ex. L (DE 1-13)). Further, "[e]ven though this case did not result in public action, there may have been private actions that cannot be disclosed to the public." (Id.).

According to the complaint, the actions of defendants Engler and Gooding caused "forever damage and injuries to the Plaintiff's Body and stopped his Life in Income and Business losses of money with unnecessary medical expenses for life." (Compl. at 36). Prior to his surgery, plaintiff was a cattle farmer, operating and working a farm, as well as a volunteer for a nonprofit, all activities he is unable to do following the surgery "without or under extreme pain and muscle spasms," with his "medical condition getting worse every day." (Id. at 34).

# COURT'S DISCUSSION

A.     Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[1]

---

[1]     Internal citations and quotation marks are omitted from all citations unless otherwise specified. Where the court does not reach that part of the hospital defendants' motion based upon insufficient service of process, the court does not set forth here the standard of review for motions under Rule 12(b)(5).

B.   Analysis

   1.   Principles of Subject Matter Jurisdiction

"The Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress." <u>Bowman v. White</u>, 388 F.2d 756, 760 (4th Cir. 1968). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." <u>United States v. Poole</u>, 531 F.3d 263, 274 (4th Cir. 2008). "[W]hen the inquiry involves the jurisdiction of a federal court,—the presumption in every stage of a cause being that it is without the jurisdiction of a court of the United States, unless the contrary appears from the record." <u>Lehigh Min. & Mfg. Co. v. Kelly</u>, 160 U.S. 327, 337 (1895).

"Furthermore, the complaint must state on its face the grounds for its jurisdiction." <u>Bowman</u>, 388 F.2d at 760. "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." <u>Pinkley, Inc. v. City of Frederick, MD.</u>, 191 F.3d 394, 399 (4th Cir. 1999). "These rules are applicable to diversity as well as to the 'Federal question' jurisdiction of the District Courts." <u>Bowman</u>, 388 F.2d at 760. "The well-pleaded complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint." <u>Columbia Gas Transmission Corp. v. Drain</u>, 237 F.3d 366, 370 (4th Cir. 2001).

"Congress has given the lower federal courts jurisdiction to hear only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." <u>Interstate Petroleum Corp. v. Morgan</u>, 249 F.3d 215, 219 (4th Cir. 2001). "'The mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. § 1331." <u>PEM Entities LLC</u>

v. Cnty. of Franklin, 57 F.4th 178, 183 (4th Cir. 2023).  For example, courts have "sometimes dismissed suits brought under [42 U.S.C.] Section 1983 'because the federal claims were insubstantial and were pretextual state law claims.'" Id. (quoting Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999)).  "[A] complaint alleging constitutional violations should be dismissed for lack of subject matter jurisdiction . . . where the constitutional allegations are wholly insubstantial or without merit, or foreclosed by prior cases which have settled the question." E. Band of Cherokee Indians v. Donovan, 739 F.2d 153, 159 (4th Cir.1984).  This is especially important in circumstances "where a wholly frivolous federal claim serves as a pretext to allow a state law issue, the real focus of the claim, to be litigated in the federal system." Davis v. Pak, 856 F.2d 648, 651 (4th Cir.1988).

"Pro se complaints are to be read liberally." White v. White, 886 F.2d 721, 724 (4th Cir. 1989).  "However, liberal construction does not require [the court] to attempt to discern the unexpressed intent of the plaintiff, but only to determine the actual meaning of the words used in the complaint." Williams v. Ozmint, 716 F.3d 801, 805 (4th Cir. 2013).  Liberal construction also "does not undermine the requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008).

2. Lack of Subject Matter Jurisdiction

Applying the foregoing principles, plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.  The complaint on its face recites state law claims for medical malpractice and torts against the hospital defendants in their provision of medical care to plaintiff, as well as administrative claims against the Board.  These claims do not demonstrate "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Interstate Petroleum Corp., 249 F.3d at 219.

7

Further, while the complaint includes references to "civil rights" and the "Federal Constitution," (e.g., Compl. pp. 1-2, 5, 37-38), these mere references to federal law, even if they can be construed as an assertion of a federal claim, are "not sufficient to obtain jurisdiction under 28 U.S.C. § 1331." PEM Entities LLC, 57 F.4th at 183.[2] Indeed, under the circumstances of this case, where plaintiff brought a state court action on the basis of the same facts, (see Def. Board Mem. Ex. B (DE 29 at 58-73) (attaching complaint in No. 23CV024845), which was dismissed on defendants' motions to dismiss in state court, (id. Ex. C (DE 20 at 74-75)), the scattered references to federal claims demonstrably "serve[] as a pretext to allow a state law issue, the real focus of the claim, to be litigated in the federal system." Davis, 856 F.2d at 651.

Plaintiff's arguments to the contrary in his opposition to the instant motions to dismiss are unavailing. Plaintiff suggests, for example, that his claims should be characterized as arising under federal law, comprising "cruel and unusual punishment against [the] Eighth Amendment," violation of Equal Protection Clause to the Fourteenth (14th) Amendment and First (1st) Amendment)," the "Ninth (9th) Amendment," and "Federal Courts to Answer a Conflict between the North Carolina General Statutes and Bill of Rights." (Pl's Opp. (DE 32) at 1). He also includes a reference to 42 U.S.C. §§ 1983 and 2000e in his civil cover sheet. (DE 1-17). However, the claims suggested fail on multiple fundamental levels, which demonstrate that the claims asserted do not meet the standard to establish federal subject matter jurisdiction.

As an initial matter, to bring a constitutional or civil rights claim under § 1983, a plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "[M]erely private conduct, no matter how discriminatory or wrongful, is excluded from the reach of § 1983." Cox v. Duke Energy Inc., 876

---

[2] Diversity jurisdiction also is lacking because the parties are not alleged to be "citizens of different States." 28 U.S.C. § 1332(a)(1).

F.3d 625, 632–33 (4th Cir. 2017). "A plaintiff cannot invoke § 1983 simply because a private actor is regulated and funded by the State." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 655 (4th Cir. 1998); see, e.g., Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 179 (4th Cir. 2009) (holding that county hospital was not a state actor, even though board members are appointed, in part, by the state). Because of this rule, all of plaintiff's asserted federal claims against the hospital defendants, who are not alleged to be state actors, fail at the outset.

Plaintiff's suggestion of federal claims against the Board fail for equally foundational reasons. The Eighth Amendment is a mismatch because such a claim requires "deliberate indifference to a prisoner's serious illness or injury," Estelle v. Gamble, 429 U.S. 97, 106 (1976), whereas plaintiff allegedly is not a prisoner and the Board is not a medical provider. The Equal Protection clause is inapplicable because the complaint does not suggest "unequal treatment was the result of intentional or purposeful discrimination." PEM Entities LLC, 57 F.4th at 184. A procedural due process claim[3] is a non-starter because plaintiff does not allege deprivation of a liberty or property interest by the Board, see The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972), and plaintiff cannot predicate his claim on a violation of state procedures, in which he must seek recourse in the first place. See Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 149–50 (4th Cir. 2014); Yates v. Jamison, 782 F.2d 1182, 1184 (4th Cir. 1986). Finally, conclusory references to additional constitutional amendments and conflicts in laws are not sufficient to meet the substantiality standard for federal question jurisdiction. PEM Entities LLC, 57 F.4th at 183.

---

[3] Plaintiff argues, for example, the Board "deprive[d] plaintiff of constitutional rights of due process by acts of 'ex parte' in hav[ing] closed meeting with administration judge," referencing state law rules and regulations regarding administrative hearings. (Pl's Opp. (DE 32) at 10-23).

9

Plaintiff also suggests that he has a federal claim because he "was denied and delayed justice of fair and equal trial" in Wake County Superior Court, due to an unfair and unconstitutional application of North Carolina Rule of Civil Procedure 9(j).[4] (Pl's Opp. (DE 32) at 2, 4-5). This suggestion of a federal claim fails, too, on multiple levels, demonstrating an "insubstantial" basis for federal jurisdiction. PEM Entities LLC, 57 F.4th at 183. For example, plaintiff, as the "party losing in state court," is precluded "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994). More fundamentally, a state court judge, not defendants here, dismissed plaintiff's claim based upon Rule 9(j), and the state court judge is not and cannot be a defendant in the instant action. King v. Myers, 973 F.2d 354, 357 (4th Cir. 1992) ("[A]bsolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her exercise of authority is flawed by the commission of grave procedural errors.").

In sum, plaintiff's complaint establishes neither that "federal law creates the cause of action [n]or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Interstate Petroleum Corp., 249 F.3d at 219. The references to federal law in the complaint and in plaintiff's opposition brief are "insubstantial and . . . pretextual state law claims," insufficient to confer federal subject matter jurisdiction. PEM Entities LLC, 57 F.4th at 183.

---

4   North Carolina Rule of Civil Procedure 9(j) requires a complaint alleging medical malpractice to be dismissed unless the pleading specifically asserts review by a person who the plaintiff will seek to qualify as an expert witness and "who is willing to testify that the medical care did not comply with the applicable standard of care." N.C. R. Civ. P. 9(j).

Accordingly, plaintiff's complaint must be dismissed "without prejudice" for lack of jurisdiction. Pinkley, Inc. v. City of Frederick, MD., 191 F.3d 394, 403 (4th Cir. 1999).[5]

## CONCLUSION

For the forgoing reasons, defendants' motions to dismiss (DE 17, 28) are GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. The clerk is DIRECTED to close this case.

SO ORDERED, this the15th day of August, 2024.

LOUISE W. FLANAGAN
United States District Judge

---

[5] In addition, and in the alternative, to the extent that reasonable jurists could conclude instead that "the complaint's defects go to the merits, not jurisdiction," the "district court's bottom line" is that plaintiff's federal claims fail as a matter of law and must be dismissed for the reasons stated herein. PEM Entities LLC, 57 F.4th at 180. In that instance, the state claims are dismissed without prejudice because the court declines to "exercise supplemental jurisdiction over the state law claims." Id. at 184.